**John W. CURTIS, Appellee,**

v.

**SEARS, ROEBUCK & COMPANY, Appellee;**

**State Farm Mutual Automobile Insurance Company, Appellant.**

**No. 84–1848.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1984.

Decided Feb. 13, 1985.

Floyd Clardy, III, Bryant, Ark., for appellant.

Robert M. Honea, Fort Smith, Ark., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

John W. Curtis brought this action for personal injuries against Sears, Roebuck & Co. Jurisdiction was based on diversity of citizenship. State Farm Mutual Automobile Insurance Company intervened as of right, seeking to impress upon any amount recovered by Curtis a lien for payments it had made to him as his no-fault medical and disability insurer. Curtis and Sears then agreed to settle the main claim, and Sears paid Curtis the agreed amount. When State Farm asked to have its lien declared and enforced, the District Court refused, instead dismissing State Farm's intervention for want of subject-matter jurisdiction. (State Farm's entry into the case did not destroy diversity, but its claim in intervention was for less than $10,000, so there was no basis of federal jurisdiction over it independent of Curtis's main claim against Sears.) We hold that the District Court should have retained and exercised ancillary jurisdiction over State Farm's intervention, and we therefore reverse.

I.

Curtis originally brought this diversity case against Sears claiming that he had been injured because Sears negligently installed the left front tire on a van. The van had been delivered to Sears to replace the two front tires. Curtis picked up the van after the tires were replaced and, while he was driving away, the left front tire came off.

State Farm is Curtis's insurance carrier. Under its no-fault first-party medical-payments and disability coverage, it paid Curtis about $9,700. State Farm moved for leave to intervene as of right in order to assert its statutory lien under Ark.Stat. Ann. § 66–4019 (Repl.1980).[1] The District Court granted the motion.

Curtis and Sears settled, and Sears paid Curtis some amount in settlement. We do not know the amount of the settlement, but it was more than the amount State Farm had advanced to Curtis. State Farm moved the District Court to declare that it had a lien for the amount that it had advanced to Curtis, and the District Court did so orally from the bench. *Curtis v. Sears Roebuck & Co.,* No. 83–2279 (W.D.Ark. May 22, 1984), Hrg. Tr. 5. The court later, however, refused to enter a written order to this effect, or to grant State Farm a judgment enforcing its lien against either Sears or Curtis. In a letter to the parties, the court stated that it feared such action might be a nullity because it had no jurisdiction. In the alternative, the court, in its discretion, declined to exercise jurisdiction over the intervention because no independent jurisdictional grounds were present. Designated Record (D.R.) at 52, 58. The District Court then dismissed State Farm's claim, D.R. at 60, and State Farm appealed.

## II.

The first issue to be determined is whether intervention was proper as a matter of right. This must be decided because "[w]here intervention is of right ... the courts and authorities are in substantial agreement that there need be no independent jurisdictional grounds to support the intervenor's claim." *Babcock & Wilcox Co. v. Parsons Corp.,* 430 F.2d 531, 540 (8th Cir.1970). In other words, intervention of right is a proper vehicle for the exercise of the court's ancillary jurisdiction. In *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 375 n. 18, 98 S.Ct. 2396, 2403 n. 18, 57 L.Ed.2d 274 (1978), the Supreme Court stated that "[t]he ancillary jurisdiction of the federal courts ... has been said to include cases that involve ... intervention of right" (citations omitted).

Sears[2] claims that intervention was not properly allowed as of right. It points out that the settlement took place without the court's ever gaining control of the settlement proceeds. No money was ever paid into the registry of the court. The money was paid directly by Sears to Curtis. Sears argues that State Farm was not so situated that the disposition of the action would, as a practical matter, impede its ability to protect its interests, because State Farm could then, and can now, file an independent action against Sears, Curtis, or both. Sears argues that the only type of intervention available to State Farm was permissive. Therefore, it says, an independent basis of jurisdiction was necessary before the District Court could entertain State Farm's claim.

We hold that the District Court properly allowed intervention as of right. Intervention of right is required, upon a timely application, if

the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). The Arkansas statute gives State Farm a right of reimbursement from and lien on Curtis's settlement recovery. State Farm therefore has an interest in the money which is the subject of the *Curtis v. Sears* action. State Farm is in a position where its interest may be impaired

---

1. Ark.Stat.Ann. § 66–4019 (Repl.1980) provides that:

> Whenever a recipient of ... benefits recovers in tort for injury, either by settlement or judgment, the insurer paying such benefits has a right of reimbursement and credit out of the tort recovery or settlement.... Said insurer shall have a lien upon said recovery to the extent of its said benefit payments.

2. Curtis did not file a brief in this Court.

if the action is finally disposed of without its participation. The lapse of time required to institute a new action and get service on Sears and Curtis could give Curtis time to leave the state, spend the money, or take other steps to impede State Farm's collection effort. Neither of the existing parties represents State Farm's interest. Curtis does not because he stands to lose what could be a potential double recovery if State Farm is allowed to remain in the action. Sears wants the action to end as soon as possible for fear of being expected to make a double payment. State Farm was therefore properly allowed to intervene as of right.

A somewhat comparable situation involving intervention is that of workers' compensation carriers. "It has been held that where the state workmen's compensation law permits subrogation of a compensation carrier, the carrier is entitled to intervene as a matter of right." *Smith Petroleum Service, Inc. v. Monsanto Chemical Co.,* 420 F.2d 1103, 1114–15 (5th Cir.1970). Sears argues that intervention of right is proper only when money has been paid into the court's registry. The only case, however, which emphasized the fact that the money had been paid into the court's registry was one where intervention was sought after judgment. *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065 (5th Cir.1970). The other cases Sears cites turned on other factors. For example, in *Olden v. Hagerstown Cash Register, Inc.,* 619 F.2d 271 (3d Cir.1980) (per curiam) the court held that the insurer's subrogation interest under Pennsylvania law was adequately represented by the plaintiff. *Olden* is also distinguishable because the court found that (1) the presence of the insurer could possibly prejudice the plaintiff because the existence of workers' compensation could be disclosed, and (2) the trial date would probably have to be delayed if a new party were added. The plaintiff did not object to the insurer's entering the case after either a verdict or a settlement had been reached. 619 F.2d at 273.

Intervention of right was properly allowed, and the District Court therefore had ancillary jurisdiction over State Farm's claim despite the fact that it did not involve the statutory jurisdictional amount.

### III.

The more difficult problem in this case is whether that ancillary jurisdiction, gained by virtue of an intervention of right, may be maintained even after the principal claim has settled, when the amount in controversy in the intervention falls short of the $10,000 jurisdictional amount.

Federal courts may retain ancillary jurisdiction of a compulsory counterclaim after the main action has been dismissed, *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Nationwide Mutual Fire Ins. Co. v. T & D Cottage Auto Parts & Service, Inc.,* 705 F.2d 685, 688 (3d Cir.1983) ("[w]here mootness occurs after the complaint and counterclaim are filed, it does not defeat the court's ancillary jurisdiction"); *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1290 (7th Cir.1980) ("a compulsory counterclaim is within the ancillary jurisdiction of a district court and thus can proceed to trial even where the plaintiff's claim is disposed of prior to trial."), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). We think the same result applies in this case involving intervention of right. See *Mendenhall v. M/V Toyota Mara No. 11,* 551 F.2d 55, 57–59 (5th Cir.1977) (a federal statute conferring a right to subrogation gave the Panama Canal Company the right to intervene to recover over $7,500.00 in the lawsuit, on the verge of settlement, between one of the Canal Company's employees and the tortfeasor); *McDonald v. E.J. Lavino Co.,* 430 F.2d at 1071 (under Mississippi law, the insurer had a right to intervene to recover $8,772.19, and the application, which was filed one day after judgment was entered on the settlement between the employee and the tortfeasor, was timely.)

The District Court, then, had jurisdiction, in the sense of legal power, to decide State Farm's intervention even after

the main claim had dropped out of the case through settlement. The Constitution and the diversity-jurisdiction statute, 28 U.S.C. § 1332(a)(1), confer jurisdiction on the district courts over "cases," not "claims" or some lesser unit of adjudication. In the pendent-jurisdiction context, see *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). So long as the pendent or ancillary claim arises out of a common nucleus of operative fact, the federal courts have power to decide it even after that portion of the case on which federal jurisdiction initially rested has, for one reason or another, disappeared. Sears correctly points out, however, citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), that the doctrine of pendent jurisdiction is a doctrine of discretion, not of plaintiff's right, and that a decision that a federal court retains *power* to decide a case is only part of the analysis, not the end. The question remains whether, as a matter of discretion, this power should be exercised. Here, the District Court, assuming for purposes of argument that it had jurisdiction, declined to exercise it, pointing to language in *Gibbs, id.* at 726, 86 S.Ct. at 1139, that when the federal claim drops out before trial, the federal court should dismiss the state claim without prejudice.

█ We do not believe the cited passage from *Gibbs* should be literally applied to forbid the exercise of jurisdiction in the circumstances of this case. In *Gibbs*, the plaintiff's complaint contained two claims: (1) a claim arising under federal law, of which the District Court had original jurisdiction under 28 U.S.C. § 1331; and (2) a claim arising under state law, based upon the same facts as the first claim, but of which, because the parties were not of diverse citizenship, the District Court had no independent jurisdiction. In context, the Supreme Court's statement in *Gibbs* means that when the federal claim drops out before trial, and a complete trial of the facts would be necessary to determine the state claim, the federal court should not proceed with such a trial. Rather, the parties should be remitted to the state courts for this purpose. The judgment to be made at this juncture is a practical one, and the situation before us on the present appeal is different from *Gibbs* in several practical respects.

In the first place, what we have here is not an independent theory of recovery based upon the same facts that also underlie a federal theory of recovery. State Farm's intervention is completely ancillary to the main claim. It cannot stand on its own, because if there were no main claim, or if Sears had never paid Curtis any money on his claim, either by way of judgment or by way of recovery, State Farm's interest under the Arkansas statute would never have come into existence in the first place. The plaintiff in *Gibbs*, on the other hand, could have chosen, if he had been so minded, to bring his state-law claim alone, foregoing assertion of any theory of recovery under federal law. State Farm's intervention, in short, is part and parcel of the main claim and of the settlement of that claim, and the hair should follow the hide.

Furthermore, one of the most important factors in the *Gibbs* analysis is an assessment of how much more work the federal court would have to do to dispose of the state claim, the federal claim having dropped out before trial. In the normal *Gibbs* situation, as envisaged in the passage from that opinion quoted above, a complete trial of all facts is still to take place. The situation here is quite different. The issue of Sears' negligence, which would have been the main question of fact to be tried if the main claim had gone to trial, has disappeared completely. It has nothing to do with State Farm's intervention. The amount of money advanced by State Farm to Curtis, almost $9,700, is not in dispute. No fact remains to be tried. In the District Court, Sears claimed that State Farm's lien should not automatically be fixed at the full amount advanced by it to Curtis, but should rather be limited to those sums reasonably paid out by State Farm. In Sears' view, State Farm paid Curtis too much, failing to insist on proper medical and other documentation. The rea-

sonableness of State Farm's payments to Curtis is a question of fact, but here the District Court, before deciding not to exercise jurisdiction over State Farm's intervention, had already ruled that this question was irrelevant under the Arkansas statute. According to the District Court, the statute gives State Farm a lien in whatever amount it has paid. The reasonableness of any payment is not a relevant question.

There may be some remaining issues, but they are all questions of law, not requiring the trial of any facts. One possible question would be whether State Farm's lien should be diminished by a pro rata share of any attorney's fee that Curtis had to incur to collect his settlement from Sears. Sears argued in the District Court for such a reduction. The District Court did not finally decide this issue, but in view of *Northwestern National Ins. Co. v. American States Ins. Co.*, 266 Ark. 432, 434, 585 S.W.2d 925, 927 (1979), holding that "costs of collection include reasonable attorneys' fees" under Ark.Stat.Ann. § 66–4019, there seems to be little doubt about its proper disposition. Sears may also raise a question as to the propriety of the entry of the judgment against it, Curtis, or both, for the amount of the lien. The District Court, in discussing the legal issues, seemed to be of the opinion that there might be a distinction between declaring a lien on one hand and entering judgment against either Sears or Curtis to enforce that lien, on the other. We are not aware of any decision of the Supreme Court of Arkansas supporting such a distinction, nor do we believe that there would be much point in the Legislature's creating a lien in favor of State Farm without the lienor's being entitled to some kind of personal judgment to enforce the lien in the event that the fund subject to it had become dissipated, as may have occurred after such a lapse of time as has occurred here.

By discussing these possibly remaining questions of state law, we do not mean to decide them finally. They are open for consideration by the District Court on remand. We mention them only to make clear that very little remained for the District Court to do in this case, once the main claim had been settled, and the amount advanced by State Farm to Curtis had been determined. No facts remained to be tried, and only questions of law were outstanding. In this situation, it makes much more sense, as a practical matter, for the District Court to go ahead and dispose of the entire case, instead of requiring State Farm to start all over again with a plenary action in a state court. To put it another way, the District Court's decision to dismiss State Farm's intervention without prejudice did not save much of the federal court's time. "With little strain on the Court's time and no prejudice to the litigants, the controversy can be stilled and justice completely done." *McDonald v. E.J. Lavino Co.*, 430 F.2d at 1074.

Another relevant factor is the extent to which the jurisdiction of the state courts would be encroached upon by the federal court's retaining and exercising jurisdiction over State Farm's intervention. In the *Gibbs* situation, if the federal court goes ahead and tries the state-law claim, it will conduct a full-blown trial and enter judgment on a claim over which it could not constitutionally have been given independent jurisdiction. Here, on the other hand, State Farm's intervention did not destroy complete diversity of citizenship. It is only the lack of the jurisdictional amount, a statutory requirement and not a constitutional one, that made invocation of the doctrine of ancillary or pendent jurisdiction necessary in the first place. On these facts, for the federal court to exercise jurisdiction does not seem nearly so serious an encroachment on the domain of the state courts as for a federal court to exercise jurisdiction over a state-law claim in the absence of diversity of citizenship. We do not mean to make light of the amount-in-controversy requirement set by Congress. Congress has the right to regulate and limit the jurisdiction of the lower federal courts, within constitutional limits, and the amount-in-controversy requirement is an important instance of its exercise of this power. Still, the requirement is not con-

tained in the Constitution, and the exercise of federal jurisdiction in this case would therefore not encroach on any area constitutionally reserved to the state courts.

In sum, we hold that the District Court has jurisdiction over State Farm's ancillary claim, and that the practical factors relevant to the question whether that jurisdiction should be exercised point definitely and firmly in favor of retaining the case and handling it to its conclusion. In our opinion, therefore, it was an abuse of discretion to dismiss State Farm's intervention under the peculiar circumstances present here.

### IV.

The judgment of the District Court is reversed, and this cause is remanded for further proceedings consistent with this opinion. On remand, it will be for the District Court to decide, as a matter of Arkansas law, whether State Farm is entitled to a judgment enforcing its lien, and, if so, against whom.

It is so ordered.